## SAMUEL M. WRIGHT *v.* JOHN H. HESSEY.

1. EVIDENCE. *Handwriting. Comparison. Writings not in the cause.* Other writings, than the instrument sued on, cannot be introduced in evidence for the purpose of comparing the handwriting by the jury or by the witnesses.

   Cases cited: Clark *v.* Rhodes, 2 Heisk., 206, and authorities there cited in foot note.

2. ARGUENDO. *Same. Where the writing is illegible.* Where the writing upon which the suit is brought is illegible, the Court say: "As the original is illegible, we could not undertake to construe the paper, although it may be that the words omitted are not very material. It is very manifest, however, that to understand the meaning of the paper, the attending circumstances must be considered, and the subsequent conduct of the parties may also tend to show its true meaning, as they understood it."

Samuel M. Wright *v.* John H. Hessey.

3. SAME. *Admissions.* The declarations of a person, who has parted with his interest in the subject matter of litigation, are not admissible to disparage the rights of a party previously acquired in good faith.

Case cited: Carnahan *v.* Wood, 2 Swan, 500.

---

FROM WILSON.

---

Appeal from the Circuit Court. W. H. WILLIAMSON, Judge.

JORDAN and JAMES F. STOKES for Wright.

B. J. TARVER for Hessey.

McFARLAND, J., delivered the opinion of the Court.

Wright began this action of trover in 1857, for a jennet and colt. He claims to have purchased the animals from John W. Jenkins. It appears, according to the plaintiff's proof, that Jenkins and the defendant Hessey owned jointly a jack and two jennets, one of the latter being at the time a colt; that they took the jack and the old jennet to the State of Texas, and there, in the year 1851 or 1852, agreed upon a division—Hessey to have the jack, and Jenkins the old jennet and colt. The colt at the time was at the home of the defendant, in this State.

It was insisted for the plaintiff that the proof showed that the defendant, who was returning to Tennessee, was, as a part of the contract, to take the colt to Texas, and deliver her to Jenkins free of charge, the next fall, or if he did not, was to keep her for Jenkins and breed her to a jack. The de-

fendant, not having taken the animal to Texas, Jenkins sold her to the present plaintiff, who brought this action to recover from Hessey the jennet, and colt raised from her.

For the defendant it was maintained that it was a part of the contract of division, or a contract. made about that time; that he, the defendant, was to take the colt to Jenkins, in Texas, in the fall of 1852, provided he moved to Texas at that time, if not, he was to pay Jenkins the price of $100, and interest, and the animal was to be his.

That as he did not move to Texas at that time, he became the owner of the animal at the price stated, before the plaintiff made his purchase from Jenkins, and that he had paid this by giving Jenkins a credit for the amount upon a note he held upon him.. In support of his view of the case, the defendant read a receipt or paper, a part of which is copied into the transcript, the Clerk being unable to decipher it all. The part transcribed is as follows: "This is to certify that I have bought from J. H. Hessey one jennet colt for one hundred dollars . . . to bring it with him next fall . . . when he moves, if not he is to pay me back with interest.    February 14, 1852. JOHN W. JENKINS."

The execution of this paper is contested. A number of other papers bearing the signature of Jenkins, and proved to be genuine, were introduced and read by the defendant, letters, receipts and a note. They had no bearing up the questions involved in this

case, except to prove the signature of Jenkins to the disputed papers. They were objected to by the plaintiff, but the Court overruled the objection, and admitted the evidence, saying "they were proper evidence to go to the jury to enable them to compare the handwriting with the paper first above-mentioned."

Without reviewing the authorities referred to on this question, it is sufficient to say that it has been settled against the rule laid down by the Circuit Judge. by this Court in at least two recent cases. *Clark* v. *Rhodes,* 2 Heisk:, 206, and an unreported case at last term.

We adhere to these decisions, and hold the action of the Circuit Judge to be erroneous.

The second question we notice is, whether or not declarations or admissions, as they are called, made by Jenkins as to the execution of this disputed paper, or as to the superior title of the defendants, made after the sale by Jenkins to the plantiff, and when Jenkins did not have possession of the property, were admissible against the title of the plaintiff. This proposition we decide in the negative. It is a general rule that the declarations of a person who has parted with his interest in the subject matter of litigation are not admissible to disparage the right of a party previously acquired in good faith. 2 Swan, 500.

The record contains proof of declarations made by Jenkins in regard to the controverted questions. Some of these, at least, were evidently made after the sale by Jenkins to the plaintiff. The objection of the

plaintiff to testimony of this character should have been sustained, and the evidence excluded.

The construction given by the Circuit Judge to the receipt or paper above set forth was conclusive in favor of the defendant, in the event the jury found that it had been duly signed by the said Jenkins. He instructed the jury that if they were satisfied that Jenkins executed the paper, or assented to it, then, if Hessey did not move to Texas and take the jennet to Jenkins the next fall after the date of the paper, the result would be that Hessey became from that time the owner of the jennet, and debtor to Jenkins for $100, the price specified in the receipt. As the transcript does not contain a full copy of the receipt, and as the original is illegible, we could not undertake to construe the paper, although it may be that the words omitted are not very material.

It is very manifest, however, that to understand the meaning of the paper the attending circumstances must be considered, and the subsequent conduct of the parties may also tend to show its true meaning, as they understand it, and as far as we can see the facts we do not differ on this question from the Judge below.

For the errors indicated the judgment will be reversed.